IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ILIANA MARIA LOAIZA, FOR<br>ROBERTO EDMUNDO LOAIZA<br>(DECEASED), | § <br> § <br> § <br> § | SA-20-CV-01110-ESC |
| *Plaintiff,* | § <br> § | |
| vs. | § <br> § | |
| KILOLO KIJAKAZI, | § <br> § | |
| *Defendant.* | § <br> § | |

**ORDER**

        This order concerns Plaintiff Iliana Maria Loaiza's request for review of a partially favorable decision of the Social Security Administration on behalf of her deceased husband, Roberto Edmundo Loaiza.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Plaintiff appeals the portion of the Commissioner's decision denying Mr. Loaiza disability insurance benefits under Title II of the Social Security Act for the period beginning May 1, 2015, based on a finding of medical improvement.  After considering Plaintiff's Original Brief [#21], Defendant's Brief in Support of the Commissioner's Decision [#22], the transcript ("Tr.") of the administrative proceedings [#9], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the Court concludes that, although substantial evidence supports the ALJ's finding of medical improvement in this case, there is not substantial evidence to support the ALJ's determination of Mr. Loaiza's residual functional capacity.  The Court will therefore vacate the opinion of the Commissioner finding Mr. Loaiza not disabled during the period of May 1, 2015, to June 30, 2016, and remand this case for further proceedings consistent with this opinion.

## I.  Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#16, #18, #19].

## II.  Legal Standard

In reviewing the Commissioner's decision to terminate disability benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve.  *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining whether a claimant is under a continuing disability or there has been medical improvement and disability benefits should be terminated, the Commissioner employs

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

the eight-step sequential framework set forth in the governing regulations. *See* 20 C.F.R. § 404.1594(f).  This approach considers the following: (1) whether the claimant is currently engaged in substantial gainful activity, (2) if not, whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment enumerated in the relevant regulations, (3) if not, whether there has been medical improvement, (4) if there has been medical improvement, whether the medical improvement is related to the claimant's ability to do work, (5) if there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, whether one of the enumerated exceptions to medical improvement is applicable, (6) if there has been medical improvement related to the claimant's ability to do work, or if one of the first group of exceptions is applicable, whether the combination of remaining impairments is severe, (7) if so, whether the claimant is able to engage in past relevant work, and (8) if not, whether the claimant is able to perform other substantial gainful activity. *Griego v. Sullivan*, 940 F.2d 942, 944 & n.1 (5th Cir. 1991) (citing 20 C.F.R. § 404.1594(f)).  In determining medical improvement in disability termination proceedings, the ultimate burden of proof lies with the Commissioner. *Id.* at 944.

### III.  Factual Background

This case challenges a partially favorable disability decision denying a portion of Mr. Loaiza's request for disability benefits based on a finding of medical improvement.  Mr. Loaiza, a naturalized U.S. citizen from Costa Rica, filed a claim for disability insurance benefits ("DIB") on June 23, 2016, alleging a disability onset date of February 1, 2015.  (Tr. 65, 225–31.)  At the time of his DIB application, Mr. Loaiza was 55 years old and had a high school education and past relevant work as a logistics manager for a freight company.  (Tr. 96.)

Mr. Loaiza received a liver transplant on April 23, 2014, and his DIB application was based on a post-transplant liver condition known as "cryptogenic cirrhosis," secondary to non-alcoholic steatohepatitis (NASH) (liver inflammation and damage caused by a buildup of fat in the liver, i.e., fatty liver disease); chronic kidney disease; hypertension; cytomegalovirus (CMV) infection (a type of herpes that can be fatal in those with suppressed immunity); diffuse lung cell non-Hodgkin's lymphoma; encephalopathy; Type II diabetes; and depression.  (Tr. 255.)  An Adult Function Report completed by Mr. Loaiza's family in support of his disability application describes him as suffering from impaired motor skills, pain and tingling in his limbs, and difficulty walking, lifting, balancing, standing, dressing, and other daily self-care activities.  (Tr. 278–90.)

The Commissioner denied Mr. Loaiza's application on July 12, 2018, and again upon reconsideration on October 24, 2018.  (Tr. 153–64.)  Mr. Loaiza requested a hearing before an ALJ, which occurred on May 21, 2019.  (Tr. 165.)  At the hearing, Mr. Loaiza amended his disability onset date to April 23, 2014 (the date of his liver transplant surgery).  (Tr. 58–59.)

Mr. Loaiza testified before the ALJ that he has had around six or seven hospitalizations since his liver transplant and has traveled frequently to Costa Rica for medical treatment and hospitalization because of a lack of health insurance in the United States.  (Tr. 71–73.)  In his testimony, Mr. Loaiza described the side effects of the many medications he takes to manage his liver post-transplant and to prevent organ rejection.  (Tr. 76–80.)  These symptoms include headaches, dizziness, vomiting, diarrhea, neuropathy (described as a sensation as if he is walking on glass), weakness, inability to walk, and numb fingers (preventing him from dressing himself or opening things).  (*Id.*)  The vocational expert testifying at the hearing characterized Mr.

Loaiza's past relevant work as an industrial organization manager for a freight company—a light, skilled position.  (Tr. 97–98.)

The ALJ issued a partially favorable decision on September 16, 2019.  (Tr. 31–43.)  The ALJ concluded that Mr. Loaiza met the requirements of the SSA through June 30, 2016, and had not engaged in substantial gainful activity since April 23, 2014, the alleged disability onset date, through the date of last insured.  (Tr. 35.)  The ALJ further found that, during the relevant period, Mr. Loaiza had the severe impairments of a history of cryptogenic status (post liver transplant), chronic kidney disease, and hypertension.  (Tr. 35.)

At step two, the ALJ concluded that Mr. Loaiza's impairments met Listing 5.09 from April 23, 2014 (the date of his liver transplant), through April 30, 2015.  (Tr. 35.)  This Listing applies to individuals who have undergone liver transplantation and dictates that such an individual is under a presumptive disability for one year following the date of transplantation. (Tr. 36–37.)  As for the time period from May 1, 2015, onward, however, the ALJ concluded that Mr. Loaiza's impairments did not satisfy any Listing.  (Tr. 37.)  In reaching this conclusion, the ALJ considered Listing 5.05 (Chronic Liver Disease) and Listing 6.05 (Chronic Kidney Disease) but found Mr. Loaiza no longer had the symptoms required to satisfy these Listings due to medical improvement.  (Tr. 37–38.)

The ALJ thereafter evaluated Mr. Loaiza's residual functional capacity (RFC) for the period from May 1, 2015, to June 30, 2016.  (Tr. 38.)  He concluded that Mr. Loaiza had the RFC to perform light work with the following additional limitations: he can only occasionally climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; and can only occasionally stoop, kneel, crouch, and crawl.  (Tr. 38.)   Taking into consideration this RFC, the ALJ concluded that Mr. Loaiza was capable of performing his past relevant work as an industrial

organization manager.  (Tr. 40–41.)  Despite finding Mr. Loaiza capable of performing his past relevant work, the ALJ reached an alternative holding—that there are other jobs existing in the national economy that he was also able to perform—Office Helper, Information Clerk, and Checker I.  (Tr. 41–42.)  The ALJ therefore concluded that Mr. Loaiza was disabled from April 23, 2014, through April 30, 2015, but was not disabled from May 1, 2015, to June 30, 2016.  (Tr. 40–41.)

After the ALJ issued his decision, Mr. Loaiza died, and his wife filed Form HA-5339 to substitute herself as Plaintiff in this case.  (Tr. 11.)  Plaintiff requested review of the ALJ's decision, but her request for review was denied by the Appeals Council on July 17, 2020.  (Tr. 1–9.)  Having exhausted all administrative remedies, Plaintiff brought the instant action on behalf of Mr. Loaiza on September 17, 2020, seeking judicial review pursuant to 42 U.S.C. § 405(g).

## IV.  Analysis

Plaintiff raises three points of error in this appeal: (1) the ALJ erred in finding medical improvement occurred as of May 1, 2015; (2) the ALJ erred in making his RFC assessment without supplementing the record with an evaluation by a physician or other expert prior to the date of last insured; (3) the ALJ's hypothetical question to the VE was flawed because it failed to reference the need for a clean and isolated work environment due to Mr. Loaiza's weakened immune system.   Although the ALJ's finding of medical improvement is supported by substantial evidence, his RFC determination is not, and therefore, the case must be remanded, and the Court will not reach the third point of error.

### A.    The ALJ did not err in finding medical improvement as of May 1, 2015.

The ALJ concluded that Mr. Loaiza had experienced medical improvement of his disabling conditions as of May 1, 2015.  (Tr. 37–38.)  Disability benefits may be terminated

6

where substantial evidence demonstrates that "there has been any medical improvement in the individual's impairment . . . (other than medical improvement which is not related to the individual's ability to work)" and "the individual is now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1). The governing regulations define medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] was disabled." 20 C.F.R. § 404.1594(b)(1). Medical improvement must relate to the ability to do work. *Id.* at § 404.1594(f)(4). Again, the Commissioner, not Mr. Loaiza, bears the burden of showing medical improvement in a termination of benefits case. *Griego*, 940 F.2d at 943–44.

Plaintiff argues that the ALJ erred in finding medical improvement because the medical records do not contain substantial evidence of improvement of Mr. Loaiza's disabling conditions post-liver transplant and the ALJ failed to properly evaluate Mr. Loaiza's residual impairments following the one-year post-transplantation period as required under the regulations. *See* 20 C.F.R. § Pt. 404, Subpt. P., App'x 1, § 5.00D12. The Court disagrees with Plaintiff's characterization of the medical evidence and concludes that the ALJ did not err in evaluating Mr. Loaiza's limitations and finding medical improvement for the closed period from May 1, 2015, to June 30, 2016.

Listing 5.00 addresses liver transplantation and explains as follows:

> Liver transplantation (5.09) may be performed for metabolic liver disease, progressive liver failure, life-threatening complications of liver disease, hepatic malignancy, and acute fulminant hepatitis (viral, drug-induced, or toxin-induced). We will consider you to be disabled for 1 year from the date of the transplantation. Thereafter, we will evaluate your residual impairment(s) by considering the adequacy of post-transplant liver function, the requirement for post-transplant antiviral therapy, the frequency and severity of rejection episodes, comorbid complications, and all adverse treatment effects.

*Id.* The ALJ's opinion does not reference Section 5.00D12 specifically, but the ALJ reviewed the medical evidence for the closed period and cited to a number of post-transplant clinical visits evidencing normal physical examinations and subjective reports of "improved, asymptomatic status." (Tr. 37.) Accordingly, any possible error regarding a failure to cite Section 5.00D12 was harmless, as substantial evidence supports the Commissioner's determination that as of May 1, 2015, Mr. Loaiza's status post-liver transplant had medically improved.

Costa Rican hospital records from the closed period document that on May 4, 2015, July 9, 2015, and September 7, 2015, Mr. Loaiza reported feeling well and was assessed with no fever, no pain, a soft and normal abdomen, normal breath and cardiopulmonary activity, no edema, no enlargement of organs, and no ascites (buildup of fluid in the abdomen due to severe liver disease). (Tr. 991, 1007, 1008.) While Mr. Loaiza reported a three-month lingering wet cough in early 2016, as well as some congestion and malaise, during hospital visits on March 17, 2016, and June 1, 2016, he presented with no fever, normal breath sounds, no other symptoms, and still no edema and a soft normal abdomen. (Tr. 1009–10.) Although outside of the relevant period, the fact that Mr. Loaiza presented again to the hospital in September 2016, and was no longer complaining of his cough bolsters the ALJ's finding of medical improvement. (Tr. 1011.) During that visit, again the doctor noted normal abdominal findings. (*Id.*) The ALJ cited these normal findings as evidence of medical improvement. (Tr. 37.)

The medical records cited by Plaintiff in her brief—which document diagnoses of sepsis, CMV, herpes, and an acute liver rejection—all predate the closed period at issue and fall within the one-year period post-transplant during which Mr. Loaiza was presumptively disabled and found to be disabled by the ALJ. The fact that Mr. Loaiza continued to receive post-transplant antiviral and anti-rejection therapies during the closed period is not, without more, sufficient

evidence that he was under a continuing disability stemming from his liver transplant. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se" without evidence of functional impairment precluding substantial gainful activity.).  There is no evidence in the record of inadequate "liver function" post-transplant or that Mr. Loaiza suffered from any additional "rejection episodes," "comorbid complications," or "adverse treatment effects" during the closed period. *See* 20 C.F.R. § Pt. 404, Subpt. P., App'x 1, § 5.00D12.  The ALJ did not commit reversible error in finding medical improvement as of May 1, 2015, such that Mr. Loaiza was no longer presumptively disabled due to his liver transplant, and substantial evidence supported his findings.

**B.      Substantial evidence does not support the ALJ's RFC determination.**

Although substantial evidence supports the ALJ's conclusion that as of May 1, 2015, Mr. Loaiza was no longer presumptively disabled, there is not substantial evidence to support the ALJ's RFC determination for the relevant period.  Plaintiff argues that the ALJ erred in making his RFC determination because there is no medical opinion of record or other evidence from which the ALJ could have determined Mr. Loaiza's functional limitations on his ability to work. Plaintiff further argues that the ALJ erred in relying on his own lay opinion to interpret the medical records and should have further developed the record by obtaining a medical source statement or medical opinion to assist him in determining Mr. Loaiza's ability to work and at what functional level.  The Court agrees.

An RFC determination is the most an individual can still do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* at § 404.1545(a)(1)–(3).  The relative weight to

be given to the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam). Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

Although it is the ALJ's responsibility to determine a claimant's RFC, an ALJ also "has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Where the existing medical evidence is inadequate to make an informed disability determination, the ALJ's duty to develop the record may be discharged by obtaining medical source statements from medical providers or referring the claimant for a consultative examination. *See Jessee v. Barnhart*, 419 F. Supp. 2d 919, 933–34 (S.D. Tex. 2006). Although the absence of a medical source statement or opinion "does not, in itself, make the record incomplete," *Ripley*, 67 F.3d at 557, an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions," *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557–58). The "salient issue" is always "whether substantial evidence exists in the record to support the ALJ's decision." *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). Furthermore, that substantial evidence must provide some "logical bridge" between the medical evidence and the ALJ's determination of a claimant's functional capacity to work. *See Price v. Astrue*, 401 Fed. App'x 985, 986 (5th Cir. 2010).

In this case, the ALJ concluded that, during the closed period of May 1, 2015, to June 30, 2016, Mr. Loaiza could perform light work as defined in 20 C.F.R. § 404.1567(b) with several additional limitations.  (Tr. 38–41.)  Based on this finding, the ALJ concluded that Mr. Loaiza was capable of performing his past relevant work as an industrial organization manager, which the VE had characterized as light work.  (Tr. 41.)

There are no medical opinions of record on Mr. Loaiza's ability to work.  The State Agency Medical Consultants at the initial and reconsideration levels both concluded that there was insufficient evidence prior to the expiration of the date of last insured to evaluate Mr. Loaiza's disability claim.  (Tr. 128, 146.)  The ALJ gave these opinions no weight, finding them inconsistent with the evidence of record.  (Tr. 40.)  In finding Mr. Loaiza capable of performing light work, the ALJ relied primarily on the same evidence discussed with respect to medical improvement above—Costa Rican hospital records from 2015 and 2016 indicating that, aside from a wet cough that ultimately resolved, Mr. Loaiza reported feeling well and had no fever, no pain, and normal abdominal examinations.  (Tr. 39, 991, 1007–11.)  Although these objective findings may provide substantial evidence that Mr. Loaiza had medically improved since the time of his acute liver rejection in October 2014, the records say nothing regarding Mr. Loaiza's functional ability to work.

The Social Security regulations define "light work" as involving lifting of no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. § 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*  The Social Security Administration has clarified that "the full range of light work requires standing or walking, off and on, for a total

of approximately 6 hours of an 8-hour workday." Titles II & XVI: Determining Capability to Do Other Work, SSR 83-10, *6 (S.S.A. 1983).

Mr. Loaiza testified before the ALJ that he was taking several immunosuppressant and anti-viral medications to prevent additional episodes of acute liver rejection during the relevant period, which cause disabling side effects, such as dizziness, vomiting, diarrhea, weakness, numbness in his fingers, and neuropathy in his feet. (Tr. 76–80.) The tingling and neuropathy, according to Mr. Loaiza, significantly limited his ability to walk or use his hands. (*Id.*) The Adult Function Reports completed by Mr. Loaiza's family members on his behalf consistently describe dizziness, tingling in his limbs, difficulty walking or lifting, balance and standing, and an inability to complete basic self-care activities, to drive, or to stand for more than a couple of minutes at a time. (Tr. 288–89.) According to the Function Reports, Mr. Loaiza only went out occasionally with his wife and daughter for brief visits to stores and, if he did so, used an electric cart to get around. (Tr. 290.)

Two of the immunosuppressants prescribed to Mr. Loaiza were tacrolimus and mycophenolate (Tr. 990–1004), both of which according to the Center for Advanced Liver Diseases and Transplantation can cause hand tremors and tingling of hands and feet. *See* Pl.'s Br. [#21], at 4 n.9 (citing "After the Transplant," https://uhmj.org (last visited Mar. 24, 2022)). Mr. Loaiza claimed he was unable to work due to his liver transplant, affected motor skills, and compromised immune system. The medical records cited by the ALJ and the entirety of the medical records before the Court do not contain any medical opinions addressing the functional limitations from Mr. Loaiza's prescribed immunosuppressant drugs during the closed period, only that he continued to be under an anti-viral and anti-rejection treatment plan during this time.

(Tr. 1007–11.)   As previously noted, the record also establishes that Mr. Loaiza died several years after the ALJ issued his opinion.  (Tr. 11.)

Based on this record, the Court finds that the ALJ erred in not further developing the record and ordering a medical source statement or consultative examination to evaluate Mr. Loaiza's functional abilities, particularly in light of his continued regimen of immunosuppressant drugs that could cause possible side effects limiting his ability to walk, stand, or engage in the other exertional requirements of light work.  Although, due to Mr. Loaiza's death, a medical source or examiner is unable to evaluate Mr. Loaiza in person, a medical source could still examine Mr. Loaiza's medical records from the closed period, taking into consideration his history of acute liver rejection, his immunosuppressant and anti-viral prescription medications, the Adult Function Report, and Mr. Loaiza's testimony before the ALJ, and opine on the likely functional limitations of someone in his condition during the relevant period.

Because the Court finds that the ALJ's RFC determination is not supported by substantial evidence, the Court need not address Plaintiff's third point of error: whether the ALJ erred in questioning the vocational expert about Mr. Loaiza's need to limit his exposure to others to avoid viral infections.   Any functional limitations that could be attributable to Mr. Loaiza's immunosuppressant and anti-viral drug therapy should be addressed by the ALJ through the further development of the record upon remand.

## V.  Conclusion

Based on the foregoing, the Court finds that the ALJ's RFC determination that Mr. Loaiza could engage in modified light work and was therefore no longer disabled during the closed period was not supported by substantial evidence.  Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **VACATED** and this case **REMANDED** for further fact-finding consistent with this opinion.

SIGNED this 31st day of March, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

14